IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-mc-00225-RBJ-KLM

JENNIFER WEDDLE,

    Movant,

v.

LULA WILLIAMS,
GLORIA TURNAGE,
GEORGE HENGLE,
DOWIN COFFY, and
MARCELLA P. SINGH,

    Respondents.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Respondents' **Motion and Memorandum to Transfer Subpoena-Related Motion to Issuing Court** [#11][1] (the "Motion"). Movant filed a Response [#18], and Respondents filed a Reply [#22]. Additionally, Respondents filed a Notice of Supplemental Authority [#14], Second Notice of Supplemental Authority [#15], and Third Notice of Supplemental Authority [#23]. The Court reviewed the Motion, Response, Reply, Respondents' supplemental authorities, case record, and applicable law.

---

[1] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).

Accordingly, the Court is fully advised in the premises. For the reasons set forth below, the Motion [#11] is **GRANTED**.[2]

## I. BACKGROUND

In June 2017, Respondents filed suit in the United States District Court for the Eastern District of Virginia, alleging that Defendant Matt Martorello ("Defendant Martorello") and others (collectively "Defendants") engaged in a "criminal enterprise established with the intent of evading state usury laws." *Compl.* [E.D. Va. #1] at 1-2.[3] Specifically, Respondents allege that Defendants employed a "rent-a-tribe" business model, whereby a payday lending scheme associates with a Native American tribe "in an attempt to cloak itself in the privileges and immunities enjoyed by the tribe—or to at least create the illusion that it enjoys tribal immunity." *Id.* at 2.

According to Respondents, Defendant Martorello associated with the Lax Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"), using the name Red Rock Tribal Lending, LLC ("Red Rock") to make illegal, high-interest loans. *Id.* at 2, 5; *Motion* [#11] at 4. Although Red Rock "claim[ed] to be owned and operated by the Tribe," Respondents allege that, in reality, Defendant Martorello's company, Bellicose Capital, LLC

---

[2] The Motion [#11] falls within a magistrate judge's authority, pursuant to 28 U.S.C. § 636(b)(1)(A), to resolve non-dispositive matters. *See, e.g.*, *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *2 (D. Nev. Aug. 15, 2014) (stating that the "context of a miscellaneous action based entirely on the disputed subpoena[] does not alter that conclusion"); *see also San Juan Cable LLC v. Dish Network LLC*, Civil Action No. 14-mc-00261-RM-MJW, 2015 WL 500631, at *1 (D. Colo. January 23, 2015) (magistrate judge transferring subpoena-related motion).

[3] "[E.D. Va. #1]" is an example of the convention the Court uses, hereinafter, to identify the document number assigned to a specific paper by the United States District Court for the Eastern District of Virginia's case management and electronic case filing system (CM/ECF) in the underlying litigation, *Williams v. Big Picture Loans, LLC*, 3:17-cv-00461-REP (E.D. Va.).

("Bellicose"), "funded the loans, controlled the underwriting, and handled the day-to-day operations." *Compl.* [E.D. Va. #1] at 2.

When suits accumulated against Defendant Martorello's "rent-a-tribe" payday loan competitors and regulation by the Consumer Financial Protection Bureau appeared imminent, Defendant Martorello sold Bellicose to the Tribe, rebranding as Ascension Technologies, LLC ("Ascension") and "continu[ing] to operate with minimal tribal involvement." *Id.* at 5-6. Simultaneously, Red Rock rebranded as Big Picture Loans, LLC ("Big Picture"). *Motion* [#11] at 5. Although Defendant Martorello formally sold Bellicose to the Tribe, Senior Judge Robert Payne found that Big Picture and Ascension did not qualify as "arm[s] of the Tribe" entitled to assert sovereign immunity. *Memorandum Opinion* [E.D. Va. #146] at 80. Indeed, Judge Payne found that "the impetus behind the formation of Big Picture and Ascension was [Defendant] Martorello and Bellicose's desire to avoid liability, more so than the Tribe's interest in starting its own business." *Id.* at 53.

As part of Defendant Martorello's Amended Initial Disclosures, Defendant Martorello identified Movant Jennifer Weddle—an attorney in Greenberg Traurig LLP's Denver office—as someone who "may have . . . discoverable information that [Defendant] Martorello may use to support his defenses." *Resp't Ex. 1, Am. Initial Disclosures* [#11-2] at 3-4; *Motion* [#11] at 6. Specifically, Defendant Martorello indicated that Movant may have discoverable information regarding the "[r]elationship between [Defendant] Martorello, Bellicose, and Sourcepoint with [the Tribe] and Red Rocks . . . and related facts." *Resp't Ex. 1, Am. Initial Disclosures* [#11-2] at 3-4. Thereafter, Respondents served Movant with a Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of

Premises in a Civil Action [#11-3] (the "Subpoena"), seeking discoverable information Defendant Martorello may use to support his defenses.

In December 2018, Movant filed a Motion to Quash Subpoena [#1] (the "Motion to Quash") in this Court, which District Judge Jackson referred to the undersigned. *Order of Reference* [#4]. In January 2019, Respondents filed the present Motion [#11], asking the Court to transfer this case to the Eastern District of Virginia for consideration of Movant's Motion to Quash [#1] in connection with the underlying litigation.

The arguments raised in Movant's Motion to Quash [#1] relate to issues in the underlying litigation on which Defendant Martorello and Respondents disagree. *See, e.g.*, *Reply* [#22] at 1. Movant's Motion to Quash, for example, argues that the Subpoena "seeks information that is protected by the attorney-client" privilege and confidentiality obligations. *Motion to Quash* [#1] at 6. Answering Respondent George Hengle's Second Set of Interrogatories in the underlying litigation, however, Defendant Martorello signaled intent to "assert good faith as a defense in this matter based, in part, on non-privileged information provided by attorney[] Jennifer Weddle . . . as well as others at their respective law firms . . . about the legality of the tribal business model and [the Tribe's] lending operations." *Resp't Ex. 3* [#11-4] at 7-8. With regard to Defendant Martorello's intended good faith defense, Respondents "disagree that [Defendant] Martorello can assert a defense based on advice of counsel without waiving the attorney-client privilege with respect to documents showing the nature of that advice." *Motion* [#11] at 7. Judge Payne has yet to rule on Respondents' Motion to Compel Information Withheld on the Basis of Attorney-Client Privilege [E.D. Va. #340], which addresses the waiver issue.

According to Respondents, Defendant "Martorello and [Movant's] attorney client [sic] relationship, or lack thereof, is [also] pending before Judge Payne." *Reply* [#22] at 2. In the present case, Movant argues that Defendant Martorello cannot even waive the applicable attorney-client privilege, since Movant "did not represent [Defendant Martorello] individually." *Response* [#18] at 12. As Respondents note, however, Defendant "Martorello seeks to intervene in this action to assert privilege, including privilege over documents generated during the course of [Movant's] representation of entities 'with respect to which Martorello is or was a principal, including Bellicose, SourcePoint, and Eventide.'" *Reply* [#22] at 5 (quoting *Motion to Intervene and Quash, in Part, Non-Party Subpoena to Jennifer Weddle* [#19] at 4). As with the waiver issue, Judge Payne has yet to rule on the attorney-client relationship issue. *See, e.g.*, *Order* [E.D. Va. #462].

Finally, Respondents cite "potential spoliation of documents by Defendants," including "Greenberg Traurig delet[ing] its client files . . . consistent with the Tribe's direction and [Defendant] Martorello's confirmation." *Motion* [#11] at 3, 8. As Respondents explain, the Subpoena seeks documents from Movant rather than Defendants since Defendant "Martorello's [personal] emails were apparently destroyed in connection with the sale of Bellicose to the Tribe." *Reply* [#22] at 6. Acknowledging Respondents' reasoning, Movant counters that Greenberg Traurig "complied" with the Tribe's direction and also "deleted the Bellicose files and disposed of them by secure methods," reinforcing that the Tribe—not Defendant Martorello—holds the applicable attorney-client privilege. *Response* [#18] at 3. According to Respondents, "Judge Payne is very familiar with this issue and thus is in a better position to rule on whether Greenberg Traurig's backup systems should be searched to the recover the missing emails." *Reply* [#22] at 2. As with the waiver and

attorney-client privilege issues, Judge Payne has yet to rule on the spoliation issue. *Minute Order* [E.D. Va. #316] (ordering parties to "file agreed order to include spoliation and ESI discovery plan"); *Order* [E.D. Va. #460] (extending—until May 13, 2019—the deadline to complete the ESI discovery plan).

## II. ANALYSIS

Federal Rule of Civil Procedure 45(f) provides that, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a [subpoena-related] motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." In the present case, the Eastern District of Virginia issued the Subpoena, requiring Movant's compliance in the District of Colorado, given Movant's employment as an attorney in Greenberg Traurig LLP's Denver office. Movant filed a subpoena-related motion, the Motion to Quash [#1], and Respondents filed the Motion [#11], asking the Court to transfer the Motion to Quash to the Eastern District of Virginia for consideration in connection with the underlying litigation. Movant "does not consent to a transfer" and argues Rule 45(f)'s "exceptional circumstances" do not exist in the present case. *Response* [#18] at 6; Fed. R. Civ. P. 45(f).

The "proponent of transfer bears the burden of showing that [exceptional] circumstances are present." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. When contemplating transfer, the Court's

> prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is

> appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*Id.* Additionally, "[j]udges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions." *Id.*

The Court first considers Respondents' argument that the Court should transfer the present case to the Eastern District of Virginia to "avoid conflicting rulings" on the waiver and spoliation issues, finding that Judge Payne's pending resolution of the waiver and spoliation issues does, in fact, weigh in favor of transferring this case. *Motion* [#11] at 2. The Court next considers Respondents' argument that the Court should transfer this case due to Judge Payne's familiarity with the underlying litigation, finding that the underlying litigation's complexity also weighs in favor of transferring this case. Finally, the Court considers Movant's argument that the Court should not transfer this case due to the "substantial burden" transfer would impose, finding that a comparatively minimal burden on Movant weighs in favor of transferring this case. *Response* [#18] at 14. The Court, therefore, concludes that "exceptional circumstances" exist in this case, since the interest in "avoid[ing] disrupting the issuing court's management of the underlying litigation . . . outweigh[s] the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. The Court **grants** the Motion [#11], transferring the present case to the Eastern District of Virginia for consideration of Movant's Motion to Quash [#1] in conjunction with the underlying litigation.

**A.     Waiver, Spoliation, & Attorney-Client Relationship Issues**

First, Respondents argue that "[t]ransfer is appropriate to avoid conflicting rulings" on the waiver and spoliation issues, especially the question of whether Defendant Martorello waives any attorney-client privilege "by asserting a good faith defense and placing the advice of his counsel at issue." *Motion* [#11] at 2. Movant responds that Judge Payne "has not already ruled on the issues presented by [Movant's] motion to quash." *Response* [#18] at 6. Citing the Advisory Committee Note, Movant explains that "[t]he first circumstance [in the note] is present only if the issuing court has actually ruled on the *specific* arguments presented by the nonparty's motion to quash." *Id.* (emphasis in original). Indeed, Movant argues that a transfer "might be appropriate only if 'the issuing court has **already** ruled on the issues, not if it might or will rule on them in the future.'" *Id.* at 8 (quoting *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014)) (emphasis in original).

The Court, however, finds that Movant employs an excessively constrained reading of the Advisory Committee Note. *Id.* The Note provides, in relevant part, that "[i]n some circumstances . . . transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, *as when* that court has already ruled on issues presented by the motion . . . ." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment (emphasis added). After quoting the Note, Movant proceeds as if the circumstances the Note enumerates constitute an exclusive list of circumstances under which the Court may transfer a subpoena-related motion. The Court perceives, however, a non-exclusive list of factors the Court might consider in deciding whether or not the interest in "avoid[ing] disrupting the issuing court's management of the underlying litigation

. . . outweigh[s] the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Indeed, as Movant explains, "[t]o balance the exceptional circumstances against the burden that transfer would impose on the subpoenaed party, courts weigh factors relating to the underlying litigation, 'includ[ing] the complexity, procedural posture, duration of pendency, and the nature of the issues *pending before, or already resolved by*, the issuing court in the underlying litigation.'" *Response* [#18] at 6-7 (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014) (citing cases)) (emphasis added).

The Court, therefore, concludes that Judge Payne's pending resolution of the waiver and spoliation issues weighs in favor of transferring the present case to the Eastern District of Virginia for consideration of Movant's Motion to Quash [#1] in connection with the underlying litigation. While the Court acknowledges Movant's argument that Movant "did not represent [Defendant Martorello] individually," Judge Payne has also yet to rule on the attorney-client relationship issue. *Response* [#18] at 12; *see, e.g.*, *Order* [E.D. Va. #462]. The Court does not wish to potentially create—through independent, conflicting rulings relating to the waiver, spoliation, and attorney-client relationship issues—a situation that renders, for example, Defendant Martorello's missing emails permanently undiscoverable. *See, e.g.*, *In re Cassell*, Case No. 2:16-mc-00602-DB-EJF, 2016 WL 3645166, at *2 (D. Utah June 30, 2016) (identifying the "interconnectedness of [the] subpoena with other discovery issues pending" in the underlying litigation as supporting "transfer to allow all of these rulings to create a consistent set of discovery decisions to address all matters in the litigation").

**B.      Judge Payne's Familiarity**

Second, Respondents argue that transfer is also warranted since Judge Payne "has actively managed discovery and is highly familiar with the [underlying litigation's] voluminous factual record and nuanced factual issues." *Motion* [#11] at 3. Furthermore, Respondents note that "[f]our subpoena-related motions filed in connection with this action have already been transfered to the [Eastern District of Virginia] so that Judge Payne can manage all discovery issues, including third-party discovery, consistently and efficiently." *Id.* Movant responds "[t]hat Judge Payne['s] [familiarity] with the case is not an 'exceptional circumstance' warranting a transfer . . . It is not exceptional, but *expected*, that the issuing court will have a better understanding than any other court of a case on its docket." *Response* [#18] at 13 (emphasis in original).

Again, the Court finds that Movant employs an excessively constrained reading of the Advisory Committee Note. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. The Note provides that "it should not be *assumed* that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* (emphasis added). Therefore, Movant's suggestion that Respondents' "argument runs contrary to . . . the unambiguous meaning of the Advisory Committee's Notes" disregards that the Court may find, through a *case-specific inquiry*, that the issuing court is, in fact, "in a superior position to resolve subpoena-related motions." *Response* [#18] at 13; Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.

The Court, despite significant effort, has struggled to gain an understanding of the more nuanced facts as well as the progress of the underlying litigation, which currently comprises 463 docket entries. Thus, the Court considers itself poorly positioned to accurately rule on Movant's Motion to Quash [#1] and appreciates Judge Payne's request

"that subpoena-related motions be transferred to his court so that he can resolve the motions consistently and fairly."[4] *Reply* [#22] at 5; *Second Notice of Supplemental Authority* [#15] at 3; *see In re Cassell*, 2016 WL 3645166, at *1 (transferring subpoena-related motion where the parties "heavily litigated the case, as evidenced by the 253 docket entries" and noting that such a case "differs from cases where the court in the underlying case may not have a great deal of familiarity with the issues in the case because a Motion to Quash from an out of district non-party is the first or one of a few motions in dispute.").

In light of Judge Payne's familiarity with the underlying litigation, the Court concludes that the litigation's complexity weighs in favor of transferring the present case to the Eastern District of Virginia for consideration of Movant's Motion to Quash [#1]. In reaching this conclusion, the Court does not simply "assume," as the Advisory Committee's Note prohibits, "that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.

## C. Burden on Movant

Third, Respondents argue that "transfer will not burden" Movant and that, "[e]ven if it did, the possibility that [Movant] might incur additional costs litigating the motion in the issuing court rather than her home forum is insufficient for a finding of prejudice." *Motion* [#11] at 13. To alleviate Movant's burden of traveling for a hearing on the Motion to Quash [#1], Respondents suggest that "the issuing court may hold a hearing telephonically, which it has done in the past." *Id.* at 14. Movant, however, describes the "significant burden [she]

---

[4] The Court sympathizes with Judge Payne's law clerk who, according to Judge Payne, "said I should say we would be happy for them to keep [subpoena-related motions]." *Second Notice of Supplemental Authority* [#15] at 3. The Court, however, also appreciates Judge Payne's assessment that "I don't think that's fair" to the litigants. *Id.*

will face if she is forced to litigate her motion in the Eastern District of Virginia," reasoning that she "is a Colorado attorney, her only office is in Denver, and her counsel is in Denver." *Response* [#18] at 14. With regard to Respondents' suggestion of a telephonic hearing, Movant argues that "appearances by telephone are in no way as effective as in-person advocacy." *Id.*

The Court finds that Movant and Respondents could—and probably would—make only minimal modifications to already-filed briefs, should the Court transfer Movant's Motion to Quash [#1]. Indeed, Movant and Respondents' arguments would remain largely the same, if not identical. *See, e.g.*, *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45 (D.D.C. 2014) ("Transferring a motion to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice."). Additionally, the Court notes the regularity of appearances by telephone and, especially, Rule 45(f)'s explicit efforts to minimize the burdens on non-parties, such as Movant, when transfer occurs. Fed. R. Civ. P. 45(f); Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment (encouraging judges to "permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending"). Finally, the Court is persuaded by Respondents' representation that Judge Payne "may hold a hearing telephonically, which [he] has done in the past." *Motion* [#11] at 14.

Therefore, the Court concludes that a comparatively minimal burden on Movant weighs in favor of transferring the present case to the Eastern District of Virginia for consideration of Movant's Motion to Quash [#1] in connection with the underlying litigation.

**D.     Weighing Interests**

The Court concludes that "exceptional circumstances" exist, since the interest in "avoid[ing] disrupting the issuing court's management of the underlying litigation . . . outweigh[s] the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. First, Judge Payne's pending resolution of the waiver and spoliation issues weighs in favor of transferring the present case. Second, the underlying litigation's complexity also weights in favor of transferring this case. Finally, a comparatively minimal burden on Movant weighs in favor of transferring this case.

### III. CONCLUSION

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#11] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Clerk shall **TRANSFER** this case to the United States District Court for the Eastern District of Virginia, Senior Judge Payne, for consideration of Movant's Motion to Quash Subpoena [#1] in connection with the underlying litigation, *Williams v. Big Picture Loans, LLC*, 3:17-cv-00461-REP (E.D. Va.).

IT IS FURTHER **ORDERED** that the Clerk shall **CLOSE** this case.

Dated:  April 15, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge